IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02179-NRN

GARY TAYLOR,

Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Gary Taylor is not disabled for purposes of the Social Security Act. (AR[1] 28.) Mr. Taylor has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). (Dkt. #13.)

### Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as

---

[1] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. (Dkt. ##10, and 10-1 through 10-8.)

adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271-72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## **Background**

At the second step of the Commissioner's five-step sequence for making determinations,[2] the ALJ found that Mr. Taylor "has the following severe impairments: obesity and diabetes mellitus." (AR 13.) The ALJ then determined that Mr. Taylor "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. (AR 14.) The ALJ found Mr. Taylor's cataracts, hearing loss, dyslexia, and, most significantly, back pain, to be non-severe impairments. (*Id.*) Because she concluded that Mr. Taylor did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Mr. Taylor has the following residual functional capacity ("RFC"):

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

> . . . [Mr. Taylor] has the residual functional capacity to perform medium work . . . except that he is able to frequently balance, kneel, crouch, crawl, and climb ramps and stairs; he can occasionally stoop. He cannot climb ladders, ropes, or scaffolds. He must avoid extreme cold. He requires instruction to be presented orally or verbally.

(AR 15.) The ALJ determined that Mr. Taylor was unable to perform past relevant work. (AR 20-21.) She noted that Mr. Taylor, who was 60 years old at the time, was an individual closely approaching retirement age. (AR 21.) The ALJ concluded, however, that, considering Mr. Taylor's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy" that Mr. Taylor could perform. (*Id.*) These included hand packager, meat trimmer, and machine packager. (*Id.*) Accordingly, Mr. Taylor was deemed to have not been under a disability from the alleged onset date of April 28, 2014. (AR 22.)

Mr. Taylor asserts three reversible errors: first, that the ALJ's stated reasons for giving less weight to the examining physician and greater weight to the non-examining physician were not legitimate or supported by substantial evidence; second, that the ALJ's decision was not supported by substantial evidence due the ALJ's errors in evaluating the medical evidence; and third, that the ALJ's reasons for rejecting Mr. Taylor's subjective allegations were not legitimate. (Dkt. #15 at 5-20.) The Court will address each in turn.

## Analysis

### I. Weighing of Medical Opinions

Mr. Taylor first argues that the ALJ committed a reversible error when she gave less weight to the opinion of an examining physician, Victor Nwanguma,

M.D., than that of a non-examining state agency medical consultant, Antonio Medina, M.D.

### a. Dr. Nwanguma's Examination

Dr. Nwanguma examined Mr. Taylor once in September 2014 as part of his disability application. (AR 256-64.) Mr. Taylor's chief complaint, which Dr. Nwanguma found to be reliable, was back pain, which had gotten progressively worse since he had gotten hurt 10 years earlier. (AR 256.) Mr. Taylor claimed he had a bulging disc in his back but indicated that he refused the recommended surgery. (*Id.*) Instead, Mr. Taylor treated the back pain with a transcutaneous electrical nerve stimulation ("TENS") unit and "a massive amount of ibuprofen"— up to 60 100mg pills per week. (*Id.*) He presented bent over a cane for support and reported that he used a walker for ambulation. (AR 256, 257.) Mr. Taylor walked with an antalgic gait and, without his cane, his balance appeared unstable: he "was able to do heel-to-toe movement, but there was a significant risk of him falling to the ground." (AR 257.)

Mr. Taylor needed assistance getting on and off the examination table and getting out of the seated position. (AR 256, 257.) He reported that he was unable to lie flat on the examination table, and therefore could not attempt a supine straight leg raise test. (AR 259.) He did not perform hip or knee joint range of motions tests. (AR 258.) A seated straight leg raise test was negative. (*Id.*). Mr. Taylor had reduced lumbar flexion to 30 degrees, lumbar extension was 5 degrees, and lateral flexion was not performed due to the risk of falling. (*Id.*) Dr. Nwanguma noted decreased sensation in both upper extremities. (*Id.*) However,

he found that Mr. Taylor had "[g]ood muscle mass and muscle tone" and "[s]trength 5/5 in both upper and lower extremities." (*Id.*)

Dr. Nwanguma diagnosed Mr. Taylor with back pain, obesity, and peripheral neuropathy with decreased sensation to his extremities. (*Id.*) Dr. Nwanguma opined that Mr. Taylor was limited in his ability to stand, walk, and sit, but if his back pain was controlled, he would have no limitations. (AR 260.) Dr. Nwanguma determined that the cane is medically necessary for balance and support, and that Mr. Taylor was limited to lifting less than 10 pounds. (*Id.*) As to postural activities, Dr. Nwanguma opined that Mr. Taylor would have "difficulty with balancing, stooping, kneeling, crouching, crawling all the time due to decreased flexion of the lumbar spine and back pain." (*Id.*)

### b. Dr. Medina's Consultative Examination

On October 23, 2014, Dr. Medina reviewed the evidence in the record, including Dr. Nwanguma's report. (AR 66-67.) Dr. Medina opined that Mr. Taylor was capable of physical work consistent with the demands of medium exertional work. (AR 69-70.) Dr. Medina found that Dr. Nwanguma's findings were inconsistent with the physical exam, and that the noted limitations were "mainly subjective limitations with no objective findings that support[] any focal neurologic deficits." (AR 67.) Dr. Medina explained that Dr. Nwanguma found no evidence of any neurologic deficits and noted that Mr. Taylor had normal motor strength. (*Id.*) He also noted that although Mr. Taylor used a cane, it was not prescribed by a doctor. (*Id.*) Dr. Medina noted that Mr. Taylor had no problems with personal care

5

and could walk 100 yards at a time. (AR 66-67.) Thus, Dr. Medina did not find Mr. Taylor's statements regarding his symptoms credible. (AR 68.)

### c. The ALJ's Determination

The ALJ accorded Dr. Medina's opinion great weight. (AR 19.) She noted that x-rays and MRI reports "show mild to at most moderate findings, not consistent with the severity of [Mr. Taylor's] alleged pain and limitations." (*Id.*) The ALJ stated that Mr. Taylor did not seek consistent medical treatment for his ailments, and only treated his pain with over-the-counter ibuprofen and a TENS unit. (*Id.*) The ALJ found that Dr. Medina's RFC assessment was consistent with the evidence as a whole, and identified Dr. Medina as "a highly qualified physician with knowledge of the rules and regulations regarding Social Security disability assessments who thoroughly examined" the relevant medical records. (*Id.*)

Conversely, the ALJ determined that Dr. Nwanguma's RFC assessment was not entitled to significant weight. (AR 20.) The ALJ found that the assessment was not supported by the medical evidence, given that Mr. Taylor had good muscle mass and normal "5/5" motor strength. (*Id.*) Therefore, the ALJ agreed with Dr. Medina that Mr. Taylor's limitations were primarily based on his subjective complaints, unaccompanied by objective findings. (*Id.*) The ALJ noted that there was no imaging evidence to support Dr. Nwanguma's findings, nor evidence that Mr. Taylor was prescribed a cane or needed a walker. (*Id.*)

The ALJ also noted other inconsistencies with Mr. Taylor's reported symptoms. Mr. Taylor told Dr. Nwanguma that he took eight ibuprofen tablets at

a time but testified at the hearing that he only took three. (AR 19-20.) Mr. Taylor claimed to be unable to read but completed a Function Report without difficulty. (AR 20.) Mr. Taylor had trouble balancing but was able to do the heel-to-toe progression. (*Id.*) Mr. Taylor refused to do certain range of motion tests but demonstrated normal motor strength. (*Id.*)

### c. Discussion

Mr. Taylor argues that in giving "no significant weight" to Dr. Nwanguma's opinion, and "significant weight" to Dr. Medina's opinion, the ALJ failed to adhere to the principles in 20 C.F.R. § 404.1527(c)(1-6), and her determination should be reversed. The Court disagrees.[3]

Although 20 C.F.R. § 404.1527(c)(1) provides that the medical opinion of a doctor who has examined a claimant is "generally" given more weight than one who has not, this is not the only relevant factor, and an examining physician's opinions are not automatically given controlling weight. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) ("An opinion found to be an examining . . . opinion may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the cited regulations and the ALJ must provide specific, legitimate reasons for rejecting it.") (citation and quotation marks omitted). Instead, the ALJ must consider **all** of the following factors:

---

[3] For claims filed before March 27, 2017, the rules found in 20 C.F.R. § 404.1527 apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply. Mr. Taylor's claim was filed July 2014, so the Court will apply 20 C.F.R. § 404.1527.

7

1. the length of the treatment relationship and the frequency of examination;

2. the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

3. the degree to which the physician's opinion is supported by relevant evidence;

4. consistency between the opinion and the record as a whole;

5. whether or not the physician is a specialist in the area upon which an opinion is rendered; and

6. other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotation marks omitted). Neither the regulation nor the Court require a factor-by-factor recitation, but the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

Here, the ALJ explained why she accorded Dr. Nwanguma's opinion little weight. Most significantly, she found that the opinion was inconsistent with the relevant medical records as well as his own examination findings. (AR 20.) Specifically, the ALJ found that Mr. Taylor's subjective complaints and Dr. Nwanguma's corresponding limitations were not supported by objective findings, considering Mr. Taylor's normal motor strength and lack of any neurologic deficits. (AR 20.) In the absence of objective findings, the ALJ determined that

Dr. Nwanguma's limitations were based primarily on Mr. Taylor's subjective complaints, and these complaints were not entirely credible. (*Id.*) This determination is supported by Dr. Medina's medical opinion (AR 67), which the ALJ found to be consistent with the record as a whole. Thus, while it is true that an ALJ should generally give more weight to the opinion of an examining physician, the ALJ may also consider whether a given physician is more familiar with other information in the record. *See Rivera v. Colvin*, 629 F. App'x 842, 845 (10th Cir. 2015) (unpublished) (affirming ALJ decision to give less weight to opinion of examining doctor who only examined claimant once and relied on her subjective complaints, rather than doctor who reviewed the more objective information contained in the claimant's medical records). In this case, in weighing the opinion evidence, it was entirely appropriate for the ALJ to consider where Dr. Nwanguma and Dr. Medina got their information. *Id.* (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (concluding the ALJ properly gave no weight to a physician's opinion because he met with the claimant only once, he relied on her subjective report, and his opinion was not supported by the evidence)).

Mr. Taylor objects to the ALJ giving Dr. Medina's opinion significant weight because he was a "highly qualified physician with knowledge of the rules and regulations regarding Social Security disability assessments" (AR 19), while failing to mention that Dr. Nwanguma also was "a highly qualified physician with knowledge" of Social Security disability program and requirements. However, as the Commissioner notes, Federal or State agency medical consultants, such as

9

Dr. Medina, are identified in the regulations as being "highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(i). Thus, their findings must be considered when evaluating opinion evidence. *Id.*; 20 C.F.R. § 404.1527(e). While medical sources who perform consultative examinations, such as Dr. Nwanguma, have "a good understanding" of disability programs and their evidentiary requirements, *see* 20 C.F.R. § 404.1519n, they are not similarly identified as experts. Accordingly, the Court sees no error in the ALJ's recognition of the difference in expertise.

Finally, Mr. Taylor claims that because both doctors reviewed the same evidence, the ALJ's conclusion that Dr. Medina's opinion was more "consistent with the evidence as a whole" is not a legitimate reason supported by substantial evidence. First, this statement does not appear to be accurate. Dr. Nwanguma reviewed "multiple pages of clinic notes from Panorama Orthopedics." (AR 256.)[4] Dr. Medina, on the other hand, reviewed, in addition to Dr. Nwanguma's report, 2014 treatment records from Denver Health that Dr. Nwanguma did not review. (AR 65, 238-55.) Second, even if the doctors had reviewed the same records, that alone does not make the ALJ's determination that Dr. Medina's opinion was more consistent with the medical records than Dr. Nwanguma's opinion inherently illegitimate. *See Gonzales v. Colvin*, 515 F. App'x 716, 719 (10th Cir. 2013) (unpublished) (affirming ALJ's finding that the same record evidence

---

[4] It is unclear to the Court what this evidence actually is—it appears to be a summary of Mr. Taylor's treatment relating to a 2011 fall at Wal-Mart, but it is unclear who wrote it and why, and refers to treatment from other providers in addition to Panorama Orthopedics. (AR 232-35.)

10

undermining the treating physician's opinion supported the non-examining physician's opinion, and therefore giving greater weight to the latter was appropriate). The ALJ found, on balance, that the relevant factors weighed against Dr. Nwanguma's opinion. She was entitled to do so under 20 C.F.R. § 404.1527(c).

In sum, substantial evidence supports the ALJ's decision to give the greatest weight to Dr. Medina's opinion.

## II. Evaluating the Medical Evidence

Mr. Taylor argues that the ALJ's decision should be reversed because she did not adequately account for all of Mr. Taylor's impairments. The Court is not persuaded for several reasons.

First, Mr. Taylor claims that the ALJ did not adequately discuss records submitted after Dr. Medina's review of the evidence. The records referred to by Mr. Taylor (AR 302-69) are from 2011, well before the date of alleged disability, and much of them relate to right knee pain. Mr. Taylor's disability claim is related to his lower back pain. (AR 170.) His chief complaint to Dr. Nwanguma was back pain. (AR 256.) At the administrative hearing, he testified that "what bothers me is just my back." (AR 43). The Court agrees with the Commissioner that the ALJ did not err in not discussing the 2011 records of knee problems because there was no evidence that it was a continued problem. Accordingly, it was not a harmful error that the ALJ did not include Mr. Taylor's knee pain in her RFC.

As to the 2011 evidence relating to back pain, the ALJ and Dr. Medina reviewed these records. The ALJ noted accurately that Mr. Taylor declined a

recommendation of surgery in September 2011, and sought no medical treatment "from January 2012 until April 2014, despite having Medicaid, a significant treatment gap given his complaints of disabling symptoms and limitation." (AR 17-18.) The ALJ found that these and other inconsistencies "diminish the persuasiveness of [Mr. Taylor's] subjective complaints." (AR 18.) The Court will not reweigh these types of credibility and evidentiary considerations here.

Mr. Taylor also argues that the ALJ did not account for his diabetes, obesity, and high blood pressure (hypertension). Mr. Taylor was diagnosed with diabetes in March 2015. (AR 272). By August 27, 2015, medical records indicate that Mr. Taylor's diabetes was "well controlled under current medical regimen." (AR 268.) He was prescribed Gabapentin and special shoes for the burning sensation in his feet, which helped. (AR 267.) Mr. Taylor testified at the April 2016 hearing that diabetic symptoms are kept under control if he takes his pills. (AR 48.) Therefore, the ALJ's determination that the evidence did not support any disabling limitations due to his diabetes is supported by substantial evidence.

Next, Mr. Taylor claims that although the ALJ found his obesity to be a severe impairment, she failed to properly consider its effects in formulating the RFC. However, while the ALJ is required to consider the effects of obesity when assessing Mr. Taylor's RFC, she may not "make assumptions about the severity or functional effects of obesity combined with other impairments." *Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015) (unpublished) (quoting SSR 02–1p, 2002 WL 34686281, at *1 (Sept. 12, 2002)). Rather, the ALJ must "evaluate each case

based on the information in the case record." *Id.* Mr. Taylor points to no medical evidence indicating that his obesity resulted in functional limitations. Thus, the factual record does not support Mr. Taylor's claim that the ALJ failed to consider the effect of his obesity, either alone or in combination with other impairments, in the RFC assessment. *See Howard v. Barnhart,* 379 F.3d 945, 948 (10th Cir. 2004) (rejecting claimant's assertions that the ALJ failed to properly consider her obesity, noting that a medical report took into account her obesity and claimant did not cite to medical evidence supporting her position).

Similarly, the ALJ recognized that Mr. Taylor suffered from high blood pressure (AR 17), but Mr. Taylor testified that his blood pressure medication keeps his hypertension under control. (AR 48.) As the Commissioner points out, it is unclear from the medical records whether high blood pressure caused lower leg swelling, and in March 2015, when Mr. Taylor was first diagnosed with diabetes, his hypertension was "at goal" and he was ordered to continue his medications. (AR 272.) In short, there is no evidence that his high blood pressure caused functional limitations.

Accordingly, the Court finds substantial evidence to support the ALJ's evaluation of the medical evidence.

### III. Mr. Taylor's Subjective Allegations

Finally, Mr. Taylor argues that the mere fact that he can still perform some range of daily activities does not preclude a finding of disability, and the minor discrepancies in Mr. Taylor's symptoms pointed out by the ALJ does not change this fact.

"Credibility determinations are peculiarly the province of the finder of fact," and the Court will "not upset such determinations when supported by substantial evidence." *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (internal quotation marks omitted). "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* The framework for the proper analysis of Mr. Taylor's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). The Court must consider (1) whether Mr. Taylor established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and Mr. Taylor's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, his pain is in fact disabling. *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004) (citations omitted). In determining whether Mr. Taylor's subjective complaints of pain are credible, the ALJ should consider various factors, such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1273–74 (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir.1991)).

Here, the ALJ explained that the severity of Mr. Taylor's reported back pain was inconsistent with both objective evidence (x-rays and MRI reports) and his conservative history of treatment (ibuprofen and a TENS unit), on the sporadic occasions he sought treatment. This is proper evidence to consider

14

under *Luna*. Moreover, the ALJ recognized that although Dr. Nwanguma assessed Mr. Taylor with limitation in standing and walking, he indicated that there was "no limitation in standing and walking if his pain is well controlled, and with no limitation in sitting if his pain is well controlled." (AR 20) (emphasis in original.) The Court cannot say that the ALJ's credibility determination as to Mr. Taylor's back pain is not supported by substantial evidence.

The other inconsistencies cited by Mr. Taylor, which he deems to be "minor," were properly considered under *Luna* even if, standing alone, they would not be sufficient to support the ALJ's credibility determination. The ALJ noted inconsistencies with the nature of Mr. Taylor's daily activities given his alleged symptoms and limitations, the extent of his dyslexia and learning issues, his level of education, his ability to operate a car, and the amount of medication he takes daily. (AR 18.) The ALJ's conclusion that "[a]ll of these inconsistencies tend to diminish the persuasiveness" of Mr. Taylor's subjective complaints is supported by substantial evidence.

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is **AFFIRMED** and Petitioner's Complaint and Petition for Review (Dkt. #1) is **DISMISSED**.

Dated this 10th day of January, 2019.

BY THE COURT:

*N. Reid Neureiter*
N. Reid Neureiter
United States Magistrate Judge